**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ADAOBI STELLA UDEOZOR** | * | 2010 JUL 29 A 9: 25 |
| | * | |
| Petitioner | * | CLERK'S OFFICE |
| | * | Civil No. PJM 09-1139 |
| v. | * | Criminal No. PJM 03-470 |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Respondent | * | |
| | * | |

**MEMORANDUM OPINION**

Doctor Adaobi Stella Udeozor, proceeding *pro se*, has filed a Motion to Vacate, Set

Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255 [Paper No. 192]. Having

considered her Motion and the Government's Opposition, the Motion is **DENIED**.

**I.**

On August 18, 2004, Udeozor, along with her husband and codefendant George Udeozor,

was charged with conspiracy, involuntary servitude, and harboring an alien for financial gain.

Following a jury trial, she was convicted of the conspiracy and harboring charge, and

found not guilty of the involuntary servitude charge. The Court sentenced her to 87 months

imprisonment, followed by 3 years of supervised release, and ordered her to pay the victim,

Chinelo Lucy Udeozor ("Chinelo"), $110,249.60 in restitution.

On appeal, the United States Court of Appeals for the Fourth Circuit summarized the

evidence presented at trial: notably that George Udeozor brought the then fourteen-year-old

Chinelo into the United States from Nigeria using his eldest daughter's passport after promising

her and her family that she could attend school in the United States; that Chinelo lived with the

Udeozors for five years, working without any compensation and without attending school,

1

instead caring for the Udeozor children, cleaning the Udeozors' house, cooking for them, and working at Dr.Udeozor's medical office, while "the Udeozors subjected [Chinelo] to repeated physical, emotional, and sexual abuse." *United States v. Udeozor*, 515 F. 3d 260, 263-64 (4th Cir. 2008). The Fourth Circuit therefore affirmed Udeozor's conviction and sentence.

In addition to this *pro se* motion to Vacate, Set Aside, or Correct Her Sentence Pursuant to 28 U.S.C. § 2255, Udeozor has filed two supplements, a motion for leave to amend her motion to vacate, and, most recently, a memorandum in support of her motion to vacate. The Government has filed a global response.

## II.

Udeozor claims ineffective assistance of trial counsel, ineffective assistance of appellate counsel and various other errors apparently based on the Court's application of the sentencing guidelines.

### A.

She first alleges that trial counsel provided ineffective assistance because he failed to: (1) review with her the strength of the Government's case, including a possible plea agreement; (2) impeach a key witness; (3) introduce evidence and call witnesses; and (4) make various objections at trial.

A successful claim of ineffective assistance of counsel requires a showing (1) that "counsel's performance was deficient;" and (2) that "the deficient performance prejudiced the outcome of the trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness" "under prevailing professional norms." *Id.* at 687-88. In other words, the performance of counsel must have fallen outside "the range of competence demanded of attorneys in criminal cases." *Hill v.*

*Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). In considering this prong, the law presumes that a counsel was competent, and "[j]udicial scrutiny of counsel's performance must be highly deferential [because i]t is all too easy for a defendant to second-guess counsel's assistance after conviction." *Id.* at 689.

A court will find counsel's performance prejudicial if a defendant shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A finding of prejudice alone is sufficient to dispose of a claim of ineffective assistance. *Strickland*, 466 U.S. at 697.

Here, Udeozor cannot establish that trial counsel's performance fell below an objective standard of reasonableness. As to the claim that counsel failed to review with her the strength of the Government's case against her or negotiate a plea agreement on her behalf, Udeozor provides no evidence for either assertion or for her related claim that the Government was prepared to make a plea offer through counsel that was not communicated to her. Not only does she not provide evidence that counsel's representation was outside the "range of competence" for criminal defense attorneys; her claim that she would have pled guilty if only he had provided competent advice is directly contradicted by her vigorous assertion of complete innocence of all the charges throughout her case, not only through counsel at trial, but in her very own words at sentencing, on appeal, even in her § 2255 papers.

Udeozor's next claim -- that counsel provided ineffective assistance by failing to impeach Chinelo's father, Emmannuel Anyadiegwu, with prior inconsistent statements -- is contradicted by the transcript of Anyadiegwu's cross-examination, which shows that in fact counsel vigorously sought to impeach the witness using a prior inconsistent statement he gave to the Government. The trial transcript indicates that Udeozor's counsel decided not to use an affidavit

3

purportedly executed by Anyadiegwu because the Government had compelling evidence that the affidavit had in fact been obtained through threats and coercion. These tactical decisions made by counsel regarding the use or non-use of evidence at trial were in no sense outside "the wide range of reasonable professional assistance" that *Strickland* recognizes.

Udeozor makes several claims regarding the alleged failure of counsel to introduce evidence that would have corroborated her position that Chinelo was treated like her other children and not abused, or that Udeozor lacked the necessary *mens rea* to be convicted. In this regard, Udeozor refers to certain purportedly omitted documents as well as the decision not to call Chinelo's brother as a defense witness. Once again, the record belies Udeozor's claims. Counsel put on a spirited and extensive defense at trial, introducing multiple documents, including family videos, and calling numerous witnesses in an effort to corroborate Udeozor's claims that she did not abuse Chinelo and that the Chinelo was treated like her own children. To the extent that Udeozor's counsel may not have offered every document or called every witness, any claim of ineffectiveness is baseless; tactical decisions regarding the presentation of evidence clearly would be cumulative in nature is not constitutionally deficient under *Strickland*. In any event, Udeozor has not demonstrated how the presentation of this additional evidence would have changed the outcome of her trial.

Udeozor also claims that counsel provided ineffective assistance because he supposedly failed to object to the introduction of certain statements of her co-defendant George Udeozor and failed to file a timely motion objecting to the Pre-Sentence Report ("PSR"). In particular, Udeozor claims that counsel allegedly failed to argue that her proper base offense level under the Sentencing Guidelines was 12 (for harboring) rather than 22 (for involuntary servitude). However, the record shows that counsel firmly objected to the introduction of George Udeozor's

4

statements at trial and also raised the issue on appeal. The record also shows that counsel made several timely objections to the PSR, including objections that Udeozor now claims he failed to make.

Finally, Udeozor's claim concerning counsel's failure to object to the Court's instruction given to the jury is also without merit. The instruction contained standard language that accurately reflected the law.[1] Udeozor objects to the "reasonable forseeability" language of the jury instruction, but provides no citation to authority or law to support her argument, nor does she articulate any prejudice that resulted.

The Court finds Udeozor's claims of ineffective assistance of trial counsel to be without merit.

---

[1] Regarding the statements and acts of co-conspirators. *Trial Tr.*, Nov. 9, 2004, at 80. ("Accordingly, the reasonably foreseeable acts, declarations, statements or omissions of any member of the conspiracy, which are done in furtherance of the common purposes of the conspiracy, are deemed under the law to be the acts of all the members, and all the members are responsible for such acts, declarations, statements and omission. If you find beyond a reasonable doubt that the defendant was a member of a conspiracy charged in the indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy may be considered against the defendant. And this is so even if such acts were done and statements were made in the defendant's absence and without her knowledge."). *See also Modern Federal Jury Instructions* §19.01 (2010) ("You will recall that I have admitted into evidence against the defendants the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial. The reason for allowing this evidence to be received against the defendants has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions. If you find, beyond a reasonable doubt, that the defendant whose guilt you are considering was a member of the conspiracy charged in the indictment, then, any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against that defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge. However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.").

**B.**

Although it is difficult to discern, Udeozor appears to be arguing that her appellate counsel provided ineffective assistance because he did not raise any of the aforementioned ineffective assistance of trial counsel claims on appeal.

A claim of ineffective assistance of appellate counsel is evaluated under *United States v. Richardson*, 195 F.3d 192 (4th Cir. 1999). Under *Richardson*, ineffective assistance claims cannot be raised on direct appeal "unless it conclusively appears from the record that defense counsel did not provide effective representation." *Richardson*, 195 F.3d at 198. Here, none of her claims about her trial counsel meet this standard or pass *Strickland's* first prong. Appellate counsel could not have properly raised those claims, and was not ineffective in failing to raise them.

**C.**

The remainder of Udeozor's claims are procedurally barred because they could have been raised on direct appeal. Before the merits of a post-conviction collateral attack can be considered, a petitioner must overcome certain procedural hurdles. *See, e.g.*, 28 U.S.C. § 2255(f); 28 U.S.C. § 2255(h); *Felker v. Turpin*, 518 U.S. 651 (1996). One of these is the procedural default rule, which bars a petitioner from raising an issue collaterally if the issue was not first raised on direct appeal. *See Davis v. United States*, 411 U.S. 233, 242 (1973) (holding that "a claim once waived . . . may not later be resurrected"). Where a claim is procedurally defaulted, habeas relief is appropriate only where the petitioner can demonstrate either cause and actual prejudice or that she is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective

6

factor external to the defense impeded [his] counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Mikalajunas,* 186 F.3d at 493.

Here, although difficult to discern, Udeozor appears to be saying that the sentence imposed by the Court was improper because the Court enhanced her sentence on the basis of a conspiracy whose object was involuntary servitude, even though she was found not guilty of the substantive offense of involuntary servitude. In particular, Udeozor appears to argue that the jury did not determine that there was any physical or legal coercion in this case or threats of such abuse.

That said, however, the jury did find that Udeozor guilty of a conspiracy, the object of which was involuntary servitude. There was ample evidence presented that not only Udeozor, but also her husband George, physically abused Chinelo, and it is clearly the law that one can be guilty of a conspiracy even though the object of the conspiracy is not established, indeed even if the individual is found not guilty of the substantive offense. *See Pinkerton v. United States,* 66 S.Ct. 1180, 1186 (1946); *Iannelli v. United States,* 420 U.S. 770, 777-778 (1975); *U.S v. Magliano,* 336 F.2d 817, 822 (C.A.Md. 1964). Regardless, Udeozor could have raised this issue on direct appeal, and did not do so, and she has shown no external factor that prevented her from doing so, much less actual prejudice as a result of appellate counsel's purported failure. The Court finds her procedurally barred from raising the issue at this time.

Finally, Udeozor claims that she did not review her Pre-Sentence Report ("PSR") until the time of her sentencing hearing, which violated Federal Rule of Criminal Procedure 32(c)(3)(A). This claim is also procedurally barred because she has not identified any external factor that prevented her from raising this issue on direct appeal, much less at the sentencing hearing itself. Moreover, Udeozor has failed to demonstrate prejudice since she does not identify

7

any facts in the PSR that are incorrect, apart from her claim that the PSR employed the wrong base level offense, an argument that counsel raised repeatedly at sentencing. Because she can demonstrate neither cause nor actual prejudice, her attempt to collaterally attack her sentence based on her allegedly late access to the PSR is also procedurally barred.

## III.

For the forgoing reasons, Udeozor's Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255 [Paper No. 192] is **DENIED**.

A separate Order will **ISSUE**.

July 28, 2010

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE